UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 13-CV-2977 (JFB) (SIL)

———————————

LARRY FORMAN, JOHN LEDOGAR, AND ANTHONY TUCCI,

Plaintiffs,

VERSUS

COUNTY OF SUFFOLK AND SUFFOLK COUNTY SHERIFF'S OFFICE,

Defendants.

———————————

**MEMORANDUM AND ORDER**
July 29, 2015

———————————

JOSEPH F. BIANCO, District Judge:

This action arises from a contract dispute between Suffolk County and the Suffolk County Correction Officers Association, which was resolved in 2009 by an arbitration award. Consistent with the arbitration award, the County did not grant retroactive pay increases (for work performed during the contract impasse period) to correction officers who had separated from service and left County employment prior to the issuance of the award. The County contends that this decision was made "due to the economic downturn and resulting budgetary distress in the last decade." (Defs.' Summary Judgment Memorandum, at 1.) Thus, the retroactive pay increase was limited to only those officers who were active at the time of the settlement and award.

Plaintiffs Larry Forman, John Ledogar, and Anthony Tucci bring this action against defendants the County of Suffolk and the Suffolk County Sheriff's Office, asserting claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq*. Specifically, plaintiffs are former correction officers who retired during the contract impasse period because of disability, and assert that the decision to deny them the retroactive pay increase violates the ADA because it subjects them to disparate treatment and/or disparate impact based upon their disability.

Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court grants the defendants' motion for summary judgment, and dismisses the case. In particular, it is uncontroverted in the record that the County's initial decision was to exclude all inactive correction officers from the retroactive wage increase, which would have resulted in the exclusion of a group of ninety-three former correction officers who

had separated from County service for a variety of reasons (thirty-six retired, twenty six resigned, twenty-three retired as a result of disability, seven died, and one was terminated). It is also uncontroverted that, after the arbitrator agreed with the County's position and issued an award excluding these ninety-three former correction officers from the retroactive wage increase, the County (at the urging of the union) voluntarily decided to make an exception for the seven correction officers who died during the pendency of the labor dispute, and allowed the family or estates of the deceased correction officers to get the benefit of the retroactive pay increases.

Although plaintiffs' counsel conceded at oral argument that the initial decision to exclude all ninety-three former employees from the retroactive pay increase could not possibly support a disability discrimination claim based upon a disparate impact theory, plaintiffs contend that the subsequent decision to exempt the seven deceased correction officers provides evidence of disparate treatment and/or disparate impact based on disability. The Court disagrees. Notwithstanding the narrow exemption for the seven deceased officers (which was done at the urging of the union to assist the families or estates of the deceased officers), the County's decision still excluded all other non-active correction officers and applied to all those who were no longer on the payroll for any reason, whether they were disabled or not. Given the uncontroverted evidence that sixty-three non-disabled former employees also were not given the retroactive wage increase, the decision to give the exemption to seven deceased employees provides no evidence of disparate treatment or disparate impact based on disability. In short, even construing the record most favorably to plaintiffs, there is absolutely no evidence in the record to support a rational finding of disparate treatment based on disability, or a rational finding that the County's actions had a disparate impact on disabled correction officers.

I. BACKGROUND

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. *See, e.g., Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed, or the opposing party has not pointed to any evidence in the record to contradict it.[1]

Plaintiffs are former corrections officers in the Suffolk County Sheriff's Office. The officers worked under a collective bargaining agreement, and were represented in labor negotiations by the Suffolk County Correction Officers Association ("SCCOA"). (Def.'s 56.1 ¶ 4.) That agreement expired in 2004,[2] and negotiations to renew the contract stalled. (*Id.* ¶ 5.) As a result, the officers worked out-of-contract for a period of time. During the pendency of the contract disputes, plaintiffs applied, and were approved, for early retirement on the basis of a disability that arose during their employment. (*Id.* ¶¶ 11-13.) At the time of plaintiffs' retirement,

---

[1]Although the parties' respective Rule 56.1 statements of facts contain specific citations to the record, the Court cites to the Rule 56.1 statement instead of the underlying citation to the record where possible.

[2] The defendants' 56.1 statement lists this date as December 31, 2007, which appears to be a typographical error. The complaint, as well as the parties' memoranda of law and the evidence in the record, reflect that the contract expired on January 1, 2004.

2

the contract negotiations remained unresolved.

After labor negotiations reached an impasse, the matter was referred to compulsory arbitration before the New York State Public Employers Relations Board in 2007. (*Id.* ¶ 6.) At the conclusion of the arbitration hearing, the Board issued an award settling a contract in March 2009. (*Id.*) As part of the arbitration award, retroactive wage increases were awarded to all correction officers who had been continually on the payroll from the time the contract expired (January 1, 2004) to the date of the arbitration award. (*Id.* ¶ 7.) Although the SCCOA argued during the arbitration hearings that the award should apply to all correction officers who worked out-of-contract during the impasse period, the arbitration award did not include these employees. As a result, plaintiffs did not receive a retroactive wage increase, because they had separated from County service before the arbitration award was issued.

After the arbitration award was finalized, the County and the SCCOA entered into a Memorandum of Agreement extending the retroactive wage increase to the estates of seven correction officers who worked during the impasse period, but who had died before the award was issued. (*Id.* ¶ 9.) The SCCOA had unsuccessfully lobbied to include these former employees in the retroactive wage award, and the arbitration award did not compel the County to include these seven former employees. (Def.'s Decl., Exhibit J.) Instead, the County voluntarily elected to extend the wage increase to the estates of these seven correction officers.

Plaintiffs filed the complaint in this action on May 21, 2013. At the conclusion of discovery, the parties filed cross-motions for summary judgment. On January 15, 2015, defendants moved for summary judgment. Plaintiffs opposed the motion and cross-moved for partial summary judgment on February 27, 2015. Defendants replied on March 27, 2015, and plaintiffs replied on April 10, 2015. The Court heard oral argument on the motion on May 15, 2015.

This matter is fully submitted, and the Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854

3

(2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

Plaintiffs bring their claims under Title I of the ADA, which provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). There is no dispute here that plaintiffs are qualified individuals, and that the County of Suffolk is a covered entity. Instead, the lone issue is whether the County discriminated against plaintiffs on the basis of their disability. A claim under the ADA may be based upon any of three theories of discrimination: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). In the present case, plaintiffs assert that the decision to exclude them from the retroactive wage increase was discriminatory under either a disparate treatment theory or a disparate impact theory. The Court addresses each of these theories in turn.

A. Intentional Discrimination

It is well settled that claims of intentional discrimination under the ADA are governed by the three-part burden-shifting laid out by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). At the first step of that analytical framework, a plaintiff must satisfy an initial burden of proving a prima facie case of discrimination. *Id.; McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). In order to meet that burden here, the plaintiffs must show that they suffered an adverse employment action because of their disability. *Id.* "Factors to be considered in evaluating a claim of intentional discrimination include: (1) the discriminatory impact of the governmental decision; (2) the decision's historical

background; (3) the specific sequence of events leading up to the challenged decision; (4) departures from the normal procedural sequences; and (5) departures from normal substantive criteria." *Tsombanidis*, 352 F.3d at 580 (noting, as examples of evidence of discrimination, the municipality's history of hostility toward a residence for addicts, the unlawful eviction of residents, and a housing code official's expression of his personal dissatisfaction with the residence's program).

The Court agrees with defendants that plaintiffs have failed to come forward with any evidence—direct or circumstantial—that the County discriminated against correction officers who retired due to disability during the contract dispute. To begin with, the County's initial decision to exclude all inactive correction officers from the wage increase was not discriminatory. The uncontroverted record is clear that the County advocated at arbitration for the exclusion of *all former employees* from the retroactive wage increase, whether they were disabled or not. The County's position applied universally to a group of ninety-three former correction officers who had severed from County service for a variety of reasons: thirty-six retired, twenty-six resigned, twenty-three retired as a result of a disability, seven died, and one was terminated for cause. (Pl.'s 56.1 ¶ 44.) The arbitrator agreed with this position, and issued an award that excluded all ninety-three individuals from the award. There is no evidence in the record that the County's actions in this regard were in any way motivated by animus towards disabled correction officers, or by a particular desire to exclude these officers from the award. Indeed, it appears that, among all the groups excluded, the largest group of individuals affected by the arbitration award was the group of non-disabled, thirty-six correction officers who voluntarily retired— presumably because their age and years of service qualified them to retire with benefits.

To the extent plaintiffs argue that defendants "forced Plaintiffs into retirement as a result of their disabilities" (Pl.'s Mem. at 13), that assertion is not supported by the record. There can be no real dispute that plaintiffs were medically unable to continue serving as correction officers, and thus they were compelled to retire by operation of civil service laws. (Oral Arg. Tr. at 3-4, 9.) The parties agree that plaintiffs were deemed medically unfit to continue their service by the Sheriff's Office Medical Evaluations Unit, and plaintiffs have not submitted any evidence to suggest that determination was incorrect.[3] (Pls.' 56.1 ¶ 18-19, 26, 33.) Although plaintiffs assert that they were told the County would force them to retire if they did not do so voluntarily, there is nothing discriminatory about that statement. First, the plaintiffs are not alleging that they were unlawfully compelled to terminate their service because of their disability; instead, the sole claim relates to the retroactive wage increase award. Second, the parties agree that, under civil service laws, the County may petition to terminate the service of a medically disabled correction officer who does not voluntarily petition to retire with disability benefits. In other words, the pressure to retire emanated from the civil service laws, and plaintiffs have not argued that anything they were told was an inaccurate description of the employment consequences of their disabled status. Finally, as defendants note, all of the plaintiffs were represented by counsel when they elected to petition to retire with disability benefits. Based upon these collective uncontroverted facts, the

---

[3] In fact, plaintiffs noted in their 56.1 Statement that plaintiffs Forman and Ledogar's own doctors also found them unable to return to work. *See* Pls.' 56.1 ¶¶ 18. 25.

5

Court concludes that nothing about plaintiffs' decision to retire gives rise to an inference of discriminatory intent.

In any event, nothing about the circumstances of the plaintiffs' retirement has any connection to the subsequent resolution of the labor negotiations. As the Court discussed above, there is no evidence that the labor negotiations or the ultimate arbitration award were motivated by discriminatory intent. Moreover, they did not have a discriminatory effect, because the exclusion of inactive employees from the wage increase applied universally to all correction officers who separated from service before the arbitration award issued.

Plaintiffs primarily take issue with the County's decision to make an exception to the arbitration ruling for the seven correction officers who died during the pendency of the labor dispute. Plaintiffs argue that the decision to make an exception for deceased officers and not for disabled officers was discriminatory. The Court disagrees. First, the decision to award the increase to the estates of deceased officers was not overtly discriminatory, because that decision still excluded all other non-active employees, whether disabled or not. It cannot be over-emphasized that disabled officers were not the only group excluded from the retroactive wage award. As the Court noted above, retroactive wages were also denied to thirty-six officers who retired, twenty-six officers who resigned, and one officer who was terminated for cause. Second, the plaintiffs' *own union* lobbied for the concession for deceased officers, after the union's efforts to achieve an award for all non-active employees failed. Thus, the clear and uncontroverted evidence before the Court is that the County's decision to award wage increases to the seven deceased officers was a compromise position, balancing the County's fiscal concerns with a concession to the union's request for compassion towards the families of the deceased officers. The fact that this concession required the County to award wage increases to only seven of the ninety-three inactive employees who worked out-of-contract supports the defendants' contention that the County's actions were motivated by limited finances, and provides absolutely no evidence of discriminatory animus.

For these reasons, the Court concludes that plaintiffs have failed to adduce any evidence supporting a prima facie case of intentional discrimination. Accordingly, the defendants are entitled to summary judgment as to this theory of liability.

### B. Disparate Impact

The defendants have also moved for summary judgment with respect to plaintiffs' claims under a disparate impact theory. Plaintiffs have cross-moved, countering that they are entitled to summary judgment as to this claim.

"In order to establish a prima facie case of disparate impact, a plaintiff must show: '(1) the occurrence of certain outwardly neutral practices, and (2) significantly adverse or disproportionate impact on person of a particular type produced by the defendant's facially neutral acts or practices.'" *Attard v. City of New York*, 451 F. App'x 21, 24 (2d Cir. 2011) (quoting *Tsombanidis*, 352 F.3d at 575). The Second Circuit has emphasized that "[t]he basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy. . . . To establish a prima facie case for employment discrimination, plaintiffs are ordinarily required to include statistical evidence to show disparity in outcome between groups." *Tsombanidis*, 353 F.3d at 575.

In this case, plaintiffs assert that the decision to extend the retroactive increase to the seven deceased officers was a neutral policy that disparately impacted disabled correction officers. At oral argument, plaintiffs' counsel conceded that the initial exclusion of *all* non-active employees did not disparately impact disabled officers. (Oral Arg. Tr. At 8 (The Court: "Is it your position that if they hadn't given the retroactive pay to the seven deceased families off these deceased officers, do you have any claim at all?" Mr. Malecki: "I don't think we have a disparate impact claim because that's the entire point of disparate impact, is that they gave this to the seven deceased officers; and the impact of that choice is that the other disabled officers do not get retroactive pay.").) Thus, plaintiffs' disparate impact claim exclusively focuses on the County's decision (following the arbitration ruling) to grant a retroactive wage increase to the seven deceased officers.

The Court disagrees that disabled correction officers were disproportionately affected by the County's actions. As the Court has noted above, numerous other groups were affected by the policy, and the plaintiffs have offered no statistical analysis or argument to show that the twenty three disabled correction officers excluded from the award were disproportionately affected as compared to the larger group of sixty-three non-disabled correction officers who were also excluded from the wage increase. In fact, the Court notes that the group most affected by the County's decision was the group of thirty-six retirees who reached retirement age and retired before the arbitration award issued. In light of these circumstances, the Court concludes that there is no evidence of disparate impact and, thus, this claim cannot survive summary judgment.[4]

Though it is true that disabled correction officers were adversely affected by the County's decision, this fact alone cannot support a claim of disparate impact. The plaintiffs must show not only that they were adversely affected, but also that they were disproportionately affected relative to other groups. The plaintiffs have failed to cite any evidence from which they can make this necessary showing, and the demographics of the group of ninety-three inactive officers eligible for a possible wage increase makes it clear that disabled correction officers were not affected any more than any other group.

---

[4] Plaintiffs appear to argue that there should be a disparate impact analysis on a sub-category of correction officers who did not receive the pay increase because they were forced to leave service (either due to disability or death) before the contract dispute was resolved. Within that sub-category, the disparate impact based upon disability is clear. However, the Court finds that argument unpersuasive for several reasons. First, there are other non-disabled employees who would be part of this sub-category, such as those who were forced to leave based upon the County's belief that they had engaged in misconduct or were otherwise not meeting the demands of their job. Secondly, and perhaps most importantly, plaintiffs cannot arbitrarily attempt to narrow the overall pool of correction officers who were subject to this decision simply to bolster their disparate treatment or disparate impact claim. Instead, the Court must analyze the entire group of former correction officers who were subject to this decision in determining whether either claim should survive summary judgment. Plaintiffs have not cited any authority for the proposition that the ADA requires an employer to treat disabled and deceased persons identically. Such a rule has no support in logic or the law. Here, when the County's decision is examined in light of the uncontroverted facts about the negotiations and the demographics of all the former correction officers affected, it is abundantly clear that no rational juror could find evidence of disparate treatment of, or disparate impact on, disabled former correction officers.

In the absence of any evidence of a disparate impact, the Court concludes that plaintiffs have failed to meet their burden to establish a prima facie case of disparate impact. Accordingly, the Court grants defendants' motion for summary judgment with respect to plaintiffs' disparate impact claim.

### IV. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted, and the plaintiffs' motion for summary judgment is denied. The Clerk of Court shall issue a judgment and close the case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: July 29, 2015
Central Islip, NY

\* \* \*

Plaintiffs are represented by Michael Borelli, Alexander Coleman, and Anthony Malecki, Borrelli & Associates, P.C., 1010 Northern Blvd., Suite 328, Great Neck, NY 11021. Defendants are represented by Rudolph Baptiste, Suffolk County Attorney's Office, 100 Veterans Memorial Highway, 5th Floor, Hauppauge, NY 11788.